In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-08-00306-CV


____________________



TIGER TRUCK, LLC, Appellant


 

V.



BRUCE'S PULP AND PAPER, LLC, Appellee 


 




On Appeal from the 1st District Court


Jasper County, Texas


Trial Cause No. 28,579






OPINION



 In this breach of contract case, the trial court awarded $313,500.00 in damages, plus
attorney's fees. In two issues, Tiger Truck, LLC (1) challenges the legal and factual
sufficiency of the evidence to support the trial court's finding that there was no valid reason
for Tiger Truck to terminate the contract; and (2) argues the trial court erred in awarding
damages in excess of the $50,000 liquidated damages contractually agreed to by the parties.

We reverse the judgment and render judgment that the appellant receive its earnest money,
that the appellee receive the sales proceeds held in escrow, and that neither party recover
attorney's fees.

Standards of Review


 "Findings of fact in a case tried to the court have the same force and dignity as a jury's
verdict upon questions." Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991). We review the trial court's findings of fact under the same standards as applied to a
sufficiency review of jury findings. Id.

 In determining the legal sufficiency of the evidence supporting the finding under
review, we view the evidence in the light most favorable to the verdict, crediting favorable
evidence if a reasonable factfinder could, and disregarding contrary evidence unless a
reasonable factfinder could not. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). 
"We will sustain a no evidence point of error when (1) the record discloses a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively
the opposite of the vital fact." Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998). "More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital fact's existence." 
Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex. 2002).

 A trial court's findings of fact are reviewed for factual sufficiency of the evidence
under the same legal standards as applied to review jury verdicts for factual sufficiency of
the evidence. Anderson v. City of Seven Points, 806 S.W.2d at 794. In reviewing a trial
court's findings for factual sufficiency, we must weigh all of the evidence in the record and
may overturn a finding only if the finding is so against the great weight and preponderance
of the evidence as to be clearly wrong and unjust. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996).

 We review legal determinations de novo. Reliance Nat'l Indem. Co. v. Advanced
Temps., Inc., 227 S.W.3d 46, 50 (Tex. 2007). "In construing a written contract, the primary
concern of the court is to ascertain the true intentions of the parties as expressed in the
instrument." Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). "To achieve this objective,
courts should examine and consider the entire writing in an effort to harmonize and give
effect to all the provisions of the contract so that none will be rendered meaningless." Id. 
"If the written instrument is so worded that it can be given a certain or definite legal meaning
or interpretation, then it is not ambiguous and the court will construe the contract as a matter
of law." Id.

The Real Estate Contract


 The parties entered into a written contract in which Tiger Truck, LLC agreed to buy
real estate that included a sawmill. The contract allowed Tiger Truck to terminate the
contract and retain the $50,000 earnest money if Tiger Truck was unable to meet certain due
diligence review items within sixty days. The contract also provided that in the event of a
default by the buyer, the seller would retain the earnest money as liquidated damages as its
sole remedy under the contract.

 The written contract provided for the demolition of the sawmill, as follows:

 Prior to closing, Seller shall continue to operate the Subject Property in its
normal and customary manner, provided however, Seller shall assist the Buyer
to enter into a contract for the demolition of the old mill based on a set of
marked-up blueprints that Buyer will provide showing which buildings and
portions of the old mill will be demolished. Proceeds from the sale of any
salvageable items shall belong to Buyer. Buyer and Seller shall mutually agree
on a date of demolition if such demolition is to occur prior to closing. Seller
agrees that all items of personal property, parts and equipment shall be left on
the Subject Property, subject to a final list of personal property agreed to by
both parties.


 The contract provided that "[t]ime is of the essence with respect to this Contract." 
The contract stated that it represented the entire agreement of the parties and could not be
amended other than by written instrument executed by both parties. The contract governed
whether Tiger Truck could demolish the sawmill and sell the salvageable items. The contract
did not require Tiger Truck to obtain fair market value for an operational mill.

 At trial, Bruce's Pulp and Paper stipulated that the due diligence review items were
not done in 60 days. The contract was executed on February 22, 2007, and the due diligence
review period expired April 23, 2007. The closing date was thirty days after the expiration
of the due diligence period, or May 23, 2007. Tiger Truck gave notice of termination on
June 21, 2007. The contract does not place a time limit on the exercise of the buyer's right
to terminate the contract for failure to complete the due diligence review items within the due
diligence period.

The Escrow Agreement


 As set forth above, the contract provided that the Seller would continue to operate the
property in its normal manner, but required the Seller to assist the Buyer in entering into a 
demolition contract and to agree on a demolition date.

 Mike Bruce, of Bruce's Pulp and Paper, testified that the parties entered into a
separate contract, with respect to the demolition of the mill as follows:

 Q. [By Plaintiff's counsel] Then as negotiations progressed in there at
one point was there a request made by [Tiger Truck's representative] Mr.
Ward of you that he be able to start removing machinery and that sort of thing
in the building?


 A. Yes. We entered into a separate contract, had a lawyer . . . to draw
up a contract because he wanted to demolish the mill so he would have room
to put his - the trucks that he was assembling, so he would have room to put
those.


 Q. Now, as far as drawing up a contract, do you know if there was
actually a written contract or if this was just an oral agreement between you
and Mr. Ward that [the lawyer] knew about?


 A. No. It was a written contract.


 . . . .


 Q. But are you saying that you and Mr. Ward did have an agreement
in the presence of [the lawyer] who was named as the escrow person?


 A. Yes.


 . . . . 


 Q. And the agreement was what? What was to be done? Was he to be
allowed to go in there and start removing this stuff?


 A. That's correct. And he was to put all the money into escrow with
[the lawyer]. Everything that he sold out of there had to be put in escrow with
[the lawyer] to be used as part of the money for the plant because I was selling
the whole plant not just - not just the plant less the saw mill.


 Q. So, the agreement was then that the money that he derived from
selling this was to be placed in an escrow account of [the lawyer's]; is that
right?


 . . . .


 Q. Was this a completely separate agreement that was not -


 A. Yes.


 Q. -- contemplated at the time of the original contract and it was
something that came about as a request of Mr. Ward?


 A. That's correct.


 Q. All right. Then the money that was to be placed in - in that, have
you learned that of the money that was placed in there, there was only about
$77,000 that was placed in there?


 A. That's correct. . . .


 The lawyer who received the funds in escrow testified, as follows:


 Q. [By Plaintiff's counsel] Then, but then at a later time, [after
execution of the purchase agreement] did Mr. Bruce and either Mr. Ward or
someone on behalf of Mr. Ward for Tiger Truck, in your office, did they make
an agreement that money was - any money obtained from items that Tiger
Truck sold was to be placed in an escrow account with you?

 A. It's my understanding the agreement was reached. Mr. Bruce and
a representative of Tiger came in and expressed that they had reached that
agreement and asked that I hold those funds.


 Q. Okay. And do you remember whether that was - whether you have
to reduce that to writing or whether that they reported to you orally about that?


 A. I've looked in the file. I don't have anything where that agreement
was reduced to writing. That was something they both expressed to me.


 . . . .


 Q. And then as - was, over a period of time, some money that was
delivered to you to be placed in escrow and did you do that?


 A. Yes, sir.


 Q. Do you have - have you brought your file with you? Can you look
at that and give me some idea about dates that you would have gotten this
money?


 A. Yes, sir. What I did is - of course, when I was first employed on
the sale of the property -


 Q. Right.


 A. - there was $50,000 deposited in my escrow account. And then
after they - the other agreement came about for taking materials off that you
were asking me about -


 Q. Right.


 A. - as moneys came in, I would make a notation as to the date and the
dollar amount.


 Q. Can you just run down that list?


 A. Yes, sir. April 9th was $3,425. Another one on April 9th was
$7,080. Another one on April 9th was $2,160. April 16th, there were two. 
One was $2,955. The second one was $13,076. May 25th was $2,000. June
5th was $23,929. And June 15th was $23,221.


 . . . .


 Q. And then the total amount that was put into escrow over and above
the 50,000 came to what?


 A. $77,846.


 Q. So, 49 of the 77 came along after 60 days, after February 22nd?


 A. Yes, sir.


 The lawyer never received cash and none of the checks he received had been written
on a Tiger Truck account. Thus, Tiger Truck did not provide anything to the lawyer which
would indicate that Tiger Truck had received cash or any additional amounts for the sale of
salvaged items. The lawyer testified that he was "not aware of any demolition agreement,
if one exists." The lawyer testified--and the parties agreed--that the parties' intent was to
apply these funds to the purchase price at closing.

The Lawsuit


 Tiger Truck terminated the contract and the seller, Bruce's Pulp and Paper, LLC, sued
for specific performance and alternatively for damages to the property due to alterations by
Tiger Truck and for lost income resulting from the seller vacating the property. (1) Alleging
it had deposited $50,000 into an escrow account and that Bruce's Pulp and Paper wrongfully
demanded the escrowed funds, Tiger Truck filed a counterclaim for breach of contract.

The Trial Court's Findings and Judgment


 The trial court made findings of fact, as follows:

 1. On February 22, 2007, Plaintiff and Defendant entered into a written
real estate sale contract, in which Plaintiff agreed to sell and Defendant agreed
to buy a tract of real estate and all improvements thereon for $4,250,000 and
deposited $50,000 earnest money into the [trust account.]


 2. In June of 2007, Defendant notified Plaintiff that Defendant would
not proceed with the purchase.


 3. There was no valid reason for Defendant to terminate the contract.


 4. Subsequent to the signing of the written contract and prior to the
termination of the contract by Defendant, Plaintiff and Defendant entered into
an oral agreement which provided that Defendant would make alterations and
changes in the property and would take and sell items from the property, with
the value of such allowable changes and sales to be credited against the sales
price.


 5. The value of the alterations, changes and sales (other than the
underground tanks and hydraulic power unit) was $240,000.


 6. The cost of removal of the underground tanks was $11,000.


 7. The cost involved in the hydraulic power unit work was $12,500.


 8. A reasonable attorney's fee for legal services rendered for Plaintiff
through the trial court proceedings is $32,000.


 9. A reasonable attorney fee for Plaintiff in the event of an appeal to
the Courts of Appeal is an additional $8,000.


 10. A reasonable attorney's fee for Plaintiff in the event of a petition
for review being filed in the Supreme Court of Texas is an additional $8,000.


 The trial court made conclusions of law, as follows:


 1. Defendant breached the written contract of February 22, 2007, and
Plaintiff is therefore entitled to $50,000 liquidated damages as provided for in
such written contract.


 2. Defendant made alterations, changes and sales of personal property
at the mill with a total value of $263,500 (which includes the $77,000 placed
by Defendant in the [trust account]).


 3. Plaintiff is therefore entitled to recover of and from Defendant the
sum of $313,500 plus attorney's fees of $32,000 through the trial court
proceedings, an additional amount of $8,000 if there is [an] appeal to the Court
of Appeals, and a further additional amount of $8,000 in the event that a
petition for review is filed in the Supreme Court of Texas. 


The Arguments on Appeal


 The trial court found "[t]here was no valid reason for Defendant to terminate the
contract." Tiger Truck contends that because it terminated the contract according to its
terms, there was no breach as a matter of law. Bruce's Pulp and Paper contends Tiger Truck
"clearly waived that right [to terminate the contract] by its continued action in re-tooling the
property and removing items from the mill and selling some and destroying some." Bruce's
Pulp and Paper relies on a series of equitable rescission cases. See Payne v. Baldock, 287
S.W.2d 507, 509-10 (Tex. Civ. App.--Eastland 1956, writ ref'd n.r.e.) (In a suit to rescind
a contract induced by fraud, the plaintiffs waived their right to rescission when they
continued to receive benefits after they became aware of the fraud); see also Barker v.
Roelke, 105 S.W.3d 75, 84-85 (Tex. App.--Eastland 2003, pet. denied) (equitable rescission
of releases not available to wrongful-death-suit plaintiff asserting mistake of fact and fraud
concerning intervenor, where plaintiff continued to seek enforcement of settlements for three
years after intervention was filed); Guerrero v. Hagco Bldg. Sys., Inc., 733 S.W.2d 635, 637-38 (Tex. App.--San Antonio 1987, no writ) (In a suit to rescind oral contract for purchase of
real property, rescission not available remedy in light of jury findings that plaintiff's
continued use and possession of the property was inconsistent and adverse to the position
ordinarily held in an action for rescission). Spellman v. American Universal Inv. Co., 687
S.W.2d 27, 30 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.) (In action to rescind
mineral deed, acceptance of rental payments and signing of division orders consistent with
deed constituted ratification that waived the right of rescission), abrogated on other grounds
by Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 677-78 (Tex. 2000). Bruce's Pulp and
Paper also cites a case decided under a contract-avoiding provision of the Securities
Exchange Act. See Reg'l Prop., Inc. v. Fin. & Real Estate Consulting Co., 752 F.2d 178 (5th
Cir. 1985).

 Tiger Truck has not sought equitable rescission, but relies upon the right granted to
it in the written contract to terminate that contract if the due diligence review items were not
completed in 60 days. Bruce's Pulp and Paper did not sue for equitable rescission of the
contract, either, but sued for a breach of the written contract. In order to recover for breach
of contract, Bruce's Pulp and Paper must prove that Tiger Truck breached the contract. See
West v. Triple B Serv., LLP, 264 S.W.3d 440, 446 (Tex. App.--Houston [14th Dist.] 2008,
no pet.) ("To prevail on a breach of contract claim, a party must establish the following
elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff
tendered performance or was excused from doing so; (3) the defendant breached the terms
of the contract; and (4) the plaintiff sustained damages as a result of the defendant's
breach."). The trial court's findings of fact do not include a finding that the parties extended
the due diligence review period. In the absence of an extension of the period, the expiration
of that period without completion of the due diligence review items triggered Tiger Truck's
right to terminate the contract and receive its earnest money.

Termination of the Contract


 In the absence of fraud, a contract that authorizes cancellation without penalty will be
enforced as it is written. See Prince v. Miller Brewing Co., 434 S.W.2d 232, 237-38 (Tex.
Civ. App.--Houston [1st Dist.] 1968, writ ref'd n.r.e.). In Prince, Miller Brewing Company
cancelled the beer distribution agreement after a beer distributor made a significant
investment in trucks and warehouses in preparation for, and during the operation of, the
distributorship. Id. at 234-35. The written contract stated that either party could terminate
the contract at any time without incurring liability to the other party. Id. at 234. Although
there was a fact issue on good cause to terminate the contract, the written contract did not
require good cause to terminate. Id. at 236, 238. Prince was fully aware of the provision
permitting cancellation without penalty and could not sue for his reliance damages. Id. at
240. Because a valid contract existed, the theory of promissory estoppel did not apply. Id. 
Here, the unambiguous language of the written contract provided that Tiger Truck could
terminate the contract if the due diligence review items were not completed in 60 days. 
Bruce's Pulp and Paper stipulated that the due diligence review items were not completed
in 60 days. Therefore, Tiger Truck had a valid reason to terminate the contract. 

 Although the contract did not place an outside time limit on Tiger Truck's right to
terminate the contract, Tiger Truck acknowledges the law imposes a reasonable time limit. 
Implicit in the trial court's finding of "no valid reason" to terminate the contract, as well as
Bruce's Pulp and Paper's waiver argument, is the suggestion that Tiger Truck did not
exercise its right to terminate the contract in a timely manner. See Tex. R. Civ. P. 299.

 The passage of sixty days from the date the contract was signed marked the first date
on which Tiger Truck could exercise its contractual right to terminate the contract, not the
last date on which it could do so. Although the due diligence period expired on April 23,
2007, the due diligence review continued after that date. Tiger Truck explains that it
received the completed Phase One Environmental Study in mid-May, 2007. Tiger Truck
learned there were underground storage tanks on the property that had not been disclosed. 
The existence of the tanks necessitated a further environmental study, which revealed that
the ground had been contaminated with petroleum products. Bruce's Pulp and Paper
installed monitoring wells to monitor the migration of the petroleum contamination into the
water table. Tiger Truck remained concerned about the effect of the contamination and hired
an environmental consultant to evaluate what Tiger Truck would have to do to obtain an
environmental insurance policy to protect its interests. The consultant informed Tiger Truck
that it could not obtain a policy unless many more monitoring wells were installed to
establish the total depth of the plume, which would involve looking at the geology for miles
around the property, and which would take a year to a year-and-a-half to complete. Tiger
Truck also learned that there may have been uncontained asbestos on the property that would
require further analysis and consultation. Tiger Truck's president testified that the company
had spent close to $200,000 on due diligence and rehabilitation of the facilities, but he
realized he would never be comfortable that he knew what the company's "exposure on the
property was."

 Tiger Truck's letter terminating the contract is dated June 21, 2008. In the letter,
Tiger Truck explained that its production requirements did not allow it to "wait for all the
property issues to be resolved[,]" and yet equity investors were not willing to fund the project
"until all the real estate issues are resolved[.]" Under the circumstances we conclude as a
matter of law that Tiger Truck timely exercised its right to terminate the contract.


Waiver of Right to Terminate Contract


 Bruce's Pulp and Paper also argues that Tiger Truck waived its right to terminate the
contract based on its continued actions on the property. The due diligence review items
included: (1) creation of a free enterprise zone; (2) acceptable appraisal; (3) Phase One
environmental study; (4) acceptable survey; and (5) acceptable title work. Although Bruce's
Pulp and Paper stipulated that the due diligence review items were not completed in 60 days,
there is some evidence that Tiger Truck continued its due diligence activities after the
relevant period expired. Bruce testified that these items had been met when Tiger Truck
terminated the contract. According to the bank officer who was handling the Tiger Truck
financing, "[b]oth the bank and SBA had approved all of the conditions except for the
remaining conditions that Tiger Truck had to complete on their part." The conditions Tiger
Truck had to meet included furnishing documentation on equity.

 The extent to which the due diligence review items were met and the date of
completion for each item is not clear in the record. Even less clear is the extent of Tiger
Truck's participation in these activities. Although an enterprise zone was never created, a
county commissioners' resolution relating to the creation of a free enterprise zone is dated
May 14, 2007. An appraisal report is dated May 3, 2007. A revised commitment for Title
Insurance is dated May 4, 2007, and refers to a survey dated April 23, 2007. (2) In a letter to
Tiger Truck dated June 11, 2007, the banker has as a condition of closing approval by the
Small Business Administration and states an anticipated closing date of August 1, 2007. A
Phase One environmental site assessment dated April 20, 2007, is attached to the appraisal. 
 The Phase One environmental study revealed that underground storage tanks caused
contamination on the property. The discovery of the tanks triggered a Phase Two
environmental study, which revealed the land had been contaminated with petroleum
products. Bruce's Pulp and Paper drilled monitor wells to comply with directives from the
Texas Commission on Environmental Quality. A June 21, 2007, email prepared by the head
of the Jasper Economic Development Corporation (JEDCO) immediately upon receiving
Tiger Truck's notice of termination recalled a meeting that had occurred the previous
Saturday. Among other things, the email reminds Ward:


 Ward was supposed to "cover the Environmental Insurance and get the
[Asbestos company's] bid" to JEDCO
 Bruce "was to get the water samples by this Friday"
 JEDCO's representative "was to contact . . . asbestos survey people." 
 a TCEQ report will be submitted to the TCEQ after it is signed by Bruce
 that the JEDCO representative would get a bid on asbestos removal the
following week
 letters supporting a grant had been sent to the Environmental Protection
Agency and the TCEQ
 the representative understood that Ward's plans were to get into the building
by June or July because the equipment order from China would be arriving
about that time
 "[e]xcept for the boiler facility, you have very little left to do, even with
removing asbestos from the main plant."
 the remaining "asbestos can be removed at a later date[.]" 



 Bruce testified that he was aware that time was of the essence to Tiger Truck and
explained that was why Bruce's Pulp and Paper moved its tenant out of the property, even
though the contract stated that prior to closing Bruce's Pulp and Paper would continue to
operate the property in its normal and customary manner. Tiger Truck remained on site in
Jasper until it terminated the contract.

 We conclude appellee's waiver argument is without merit. Waiver is the intentional
relinquishment of a known right or intentional conduct inconsistent with claiming that right. 
Aguiar v. Segal, 167 S.W.3d 443, 451 (Tex. App.--Houston [14th Dist.] 2005, pet. denied). 
Intent may be shown "by silence or inaction for so long a period as to show an intention to
yield the known right." Id. In Aguiar, the trial court found that the sellers never objected
about a delay in obtaining a loan commitment and elected by their silence to treat the
contracts as continuing. Id. at 453. In reversing for legal insufficiency, the appellate court
noted that the sellers merely agreed to a short extension of the closing date, but the
transaction did not close by the extended date because the buyer had not secured financing. 
Id. at 454. The trial court erred in making as a conclusion of law that the sellers waived any
right to terminate the contract based on delays in financing. Id. Here, although the evidence
shows that Tiger Truck did not terminate the contract at its earliest opportunity, none of Tiger
Truck's behavior after April 23, 2007, indicates an intention to waive its right to terminate
the contract. At most, Tiger Truck delayed exercising its right to terminate until it
determined that it could not promptly work around the still-developing environmental issues
with the property. Nor did Tiger Truck's salvage activities waive its rights under the
contract. The contract specifically provided for the sawmill's demolition prior to closing.

Refund of Earnest Money


 If a contract provides for the return of the earnest money to the buyer in the event the
buyer properly terminates the contract, and the buyer terminates the earnest money contract
according to its terms, the trial court errs in awarding the earnest money to the seller. See
Huntley v. Enon Ltd. P'ship, 197 S.W.3d 844, 850-52 (Tex. App.--Fort Worth 2006, no pet.). 
In Huntley, the earnest money contract allowed the buyer to terminate if the seller's lender
did not approve the buyer's assumption of the loan by a certain date. Id. at 847. Although
the lender approved the assumption, it added an assumption of environmental liability that
was not contained in the contract. Id. at 847-48. Because the lender waived the
environmental guarantee only after the buyer had terminated the contract, the unambiguous
terms of the contract required a return of the earnest money to the buyer notwithstanding the
lack of a breach by the seller. Id. at 852-53. Here, the contract provides for a return of the
earnest money to Tiger Truck notwithstanding the efforts on the part of Bruce's Pulp and
Paper to address the issues raised in the due diligence review. The issues were not resolved
within the time provided by the contract, and Tiger Truck was entitled to terminate the contract.

 The contract allowed Tiger Truck to terminate without penalty if the due diligence
review items were not completed in 60 days. The evidence conclusively established that the
due diligence review items were not completed in 60 days. Tiger Truck did have a valid
reason to terminate the contract and did not waive its right to do so. No evidence supports
the trial court's finding that Tiger Truck did not have a valid reason to terminate the contract. 
Because Tiger Truck's termination of the contract was proper, there is no evidence
supporting the trial court's conclusion of law that Tiger Truck breached the written contract. 
We sustain issue one.

Evidence Relating to Damages


 In its second issue, Tiger Truck argues "the evidence is legally and factually
insufficient to support the trial court's finding that the value of the 'alterations, changes and
sales' was $263,500." (3)

 Plaintiff's counsel asked Mike Bruce (evidently without objection) "you had an
agreement that whatever obtained or was obtained from that was to be put into this escrow
account, which would be applied against the deal - . . . . And since there wasn't a deal, you
feel that you should get the value of those things that he tore up and took up right up to the
one day before he wrote the letter terminating, right?" Bruce replied, "I feel like I not only
should get that, but I should get what he didn't get out of it because I've had people tell me
that they had the opportunity to buy some of the stuff like that and he wouldn't sell them to
you." According to Bruce, the $240,000 damages "relates to what the value was when I
bought the property [in 2001] that Louisiana-Pacific had put on it." Bruce also testified that
his company spent $10,000 to $15,000 on a hydraulic tank that was left on the property, and
that his company spent $11,000 on "underground tank drilling, the monitor wells, all that,
doing that environmental, closing that out."

 On appeal, Bruce's Pulp and Paper concedes that the liquidated damages clause
controls the written contract, but argues it recovered $263,500 "from the failure to abide by
the terms of the separate oral agreement[.]" The written contract provided for the demolition
of the sawmill. The written contract allowed Tiger Truck to demolish the sawmill and sell
the materials it salvaged from the demolition. The oral agreement merely required Tiger
Truck to deposit the proceeds from the sale of the salvaged materials in escrow with the
lawyer who was also holding the earnest money. There is no evidence, direct or
circumstantial, that Tiger Truck obtained any proceeds from a sale of materials salvaged from
the sawmill that were not deposited into escrow. Although Bruce testified that the sawmill
was worth $250,000 in 2001, there is no evidence that Tiger Truck agreed to obtain full value
for the sawmill. Nor was there any requirement, either in the written contract or the oral
agreement, for Tiger Truck to obtain any amount certain for the sale of the personal property. 
The only duty Tiger Truck had with respect to the funds received from the sale of the
property was the requirement that the proceeds be placed in escrow.

 The evidence is undisputed that Tiger Truck deposited $77,846 into escrow, and (as
stated above) there is no evidence that Tiger Truck received any additional funds from the
sale of the property. Assuming there was an oral contract separate and apart from the written
contract (as Bruce's Pulp and Paper argues and the trial court found), as opposed to an oral
agreement supplying a term not included in the written agreement (as Tiger Truck contends),
there is no evidence that Tiger Truck breached the oral agreement. The evidence regarding
the value of the sawmill and the amount of money expended in trying to close the sale of the
real estate related solely to reliance damages which are precluded by the liquidated damages
clause of the earnest money contract. See Prince v. Miller Brewing Co., 434 S.W.2d at 240. 
Only the evidence of the amount of money actually collected by Tiger Truck through sales
of material salvaged from the dismantled sawmill is relevant to the oral escrow agreement
and the alleged breach thereof. We sustain issue two.

Attorney's Fees


 In issue four, Tiger Truck contends it is entitled to recover attorney's fees, and
requests a remand to the trial court. The question we consider is whether the trial court erred
in failing to award attorney's fees to Tiger Truck. The contract provides that in the event of
a lawsuit alleging a breach of the contract, the "prevailing party" shall be entitled to recover
its reasonable attorney's fees. See Blockbuster, Inc. v. C-Span Entertainment, Inc., 2008 WL
3318882, *7 (Tex. App.--Dallas Aug. 12, 2008, pet. filed).

 Before the lawsuit was filed and within 30 days of terminating the contract, Tiger
Truck proposed in writing a termination agreement under which the $77,846 would be
released to Bruce's Pulp and Paper and the $50,000 earnest money would be released to
Tiger Truck. Although it is clear from the letter that Tiger Truck otherwise thought it had
a claim to the $77,846 and that without Tiger Truck's consent the lawyer was not authorized
to release the money to Bruce's Pulp and Paper, the result proposed by Tiger Truck correctly
applies the parties' agreement as to the funds in escrow in the event the sale did not close.

 Because the contract was properly terminated, the $50,000 earnest money should have
been returned to Tiger Truck, and the $77,846 collected from sales of materials should have
been released to Bruce's Pulp and Paper. At oral argument in this Court, Tiger Truck argued
that the $77,846 was to be part of the purchase price paid at closing, and Bruce's Pulp and
Paper was entitled to that money because the sale did not close. In its brief to this Court,
Tiger Truck argues, that "it would be equitable for Bruce's Pulp and Paper to recover this
$77,000[.]" In its prayer for relief, Tiger Truck asks this Court to "release the $77,000 in
escrow to BPP."

 We agree with Tiger Truck's assertion that Bruce's Pulp and Paper is entitled to the
$77,846. However, in the trial court, Tiger Truck's president testified as follows:

 Q. . . . So, as I understand it, then your position is that you
acknowledge that at least as to the $77,000 that's in the escrow amount, you
acknowledge that that amount would be owed to Mr. Bruce?


 A. That's not what the contract says.


 Q. I say, do you - - okay. So, you deny that he's entitled to that even
though you made a separate agreement with him agreeing that it would be his? 


 A. No, I didn't say it would be his. I said it would go in the escrow
account.


 Q. All right. So, what I'm saying is you want to say the contract is
void as to some purposes, but it's good as to other purposes that help you,
right?


 A. No, sir, that's not what I said at all.


 Q. All right. So, you are now saying he's not entitled to the money
that you got from things that belonged to him out there at the place and you
went around and sold them and got money for it and then you're saying that
you're entitled to that money?


 A. That's what the contract says.


The trial court denied Tiger Truck's motion for "instructed verdict." The trial court could
reasonably have concluded that Tiger Truck mistakenly asserted it was entitled to the
$77,846 under the written contract, even though the sale did not close. Tiger Truck should
not have prevailed at trial, and did not, with respect to the $77,846 in escrow.

 Under the circumstances, we do not find error by the trial court in declining to award
attorney fees to Tiger Truck. We conclude under the circumstances neither party should
recover attorney's fees as a "prevailing party" under the contract. Issue four is overruled.

 We reverse the trial court's judgment, and render judgment that the $50,000 in earnest
money in escrow be released to Tiger Truck, that the $77,846 in sale proceeds in escrow be
released to Bruce's Pulp and Paper, and that neither party recover attorney's fees from the
other.

 REVERSED AND RENDERED.




 ___________________________

 STEVE McKEITHEN

 Chief Justice



Submitted on January 15, 2009

Opinion Delivered March 19, 2009


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. As Bruce's Pulp and Paper concedes, specific performance is not a remedy available
to it under the written contract.
2. The contract required Tiger Truck to give notice of objections to the title
commitment within 30 days.
3. Tiger Truck does not claim the $77,846 it collected from sales of salvaged materials
and deposited in the lawyer's escrow account.