Opinion issued May 12, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00141-CV

———————————

William C. Robbins, Appellant

V.

Maxwell-GMII,
Inc., Appellee



 



 

On Appeal from the 11th District Court

Harris County, Texas



Trial Court Case No. 2008-64346

 



 

MEMORANDUM OPINION

This is a
dispute over who is entitled to the earnest money deposited by the potential
buyer of an automobile dealership when the transaction failed to close.  The trial court granted summary judgment,
concluding that the seller was entitled to retain the earnest money.  We affirm.

Background 

On July 25, 2008,
Plaintiff/Appellant William C. Robbins entered into an Asset Purchase Agreement
(“APA”) to purchase a San Antonio automobile dealership, Freedom Chevrolet,
from Defendant/Appellee Maxwell-GMII, Inc. 
In accordance with the APA’s terms, Robbins deposited $250,000 in
earnest money with an escrow agent.   

1.     The APA’s earnest money provisions

The APA provides for disbursement
of the earnest money to either Robbins or Maxwell, depending on whether the contemplated
transaction closed and, if it did not, depending on the reason.  Each scenario provides for disbursement to Maxwell,
the seller, except:

If Purchaser elects not to
close because of Seller’s default or the failure to satisfy any of the
conditions in Sections 4.1.1, 4.1.5., or 4.1.8 below, then the Earnest Money
Deposit shall be returned to Purchaser.

 

The parties agree that Maxwell was never in default,
and that Section 4.1.1 is the only condition at issue here.  It provides:

4.1.    Conditions Precedent to Obligations of
Purchaser.  The obligations of
Purchaser to consummate the transactions contemplated by this Agreement at the
Closing are subject to the satisfaction, or the written waiver by Purchaser, of
each of the following conditions:

 

4.1.1. Unconditional approval by the Manufacturer of
Purchaser for a new Sales and Service Agreement for Chevrolet on Chevrolet’s
standard form.

 

Robbins received this unconditional
approval from General Motors (“GM”) on October 9, 2008, seventy-six days after
the APA was entered.  It is the effect of
the timing of that approval upon which this dispute turns.

2.     Closing date

Section 5.1 of the APA provides
that:

Unless otherwise agreed to
in writing by the parties, closing of the transactions contemplated by this
Agreement shall take place at the Dealership Location on the first Monday,
following the satisfaction or waiver of the conditions contained in Section 4,
above (“Closing Date”), or such other date as mutually agreed by Seller and
Purchaser.  If the Closing has not
occurred on or before the date that is sixty (60) days after the date of this
Agreement (“Closing Date Deadline”), either party may terminate this Agreement
by written notice to the other party, provided that rights and remedies of a
party arising from or related to a breach of this Agreement shall survive the
termination.

 

The parties entered a Letter
Agreement, also on July 25, 2008, memorializing an additional agreement related
to section 5.1 of the APA and the timing of the approvals serving as conditions
precedent under the APA:

Section
5.1 of the [APA] states that either party may terminate the [APA] if Closing
has not occurred by the Closing Date Deadline. 
Section 4.1.1 of the [APA] states that it is a condition precedent to
Purchaser’s obligation to consummate the transactions contemplated by the [APA]
that Purchaser receive unconditional approval by [General Motors]. . . . If
Closing has not occurred by the Closing Date Deadline and the only remaining
conditions are Manufacturer approval as contemplated by Section 4.1.1 . . .
Purchaser may extend the Closing Date Deadline two (2) times by written notice
to Seller prior to the original or the extended, as the case may be, Closing
Date Deadline for an additional thirty (30) days each.

 

On the Closing Date Deadline of
September 23, 2008 (60 days following the date of execution of the APA),
approval from GM had not been received.  At
this point, Robbins did not, however, “terminate this Agreement by written
notice” as permitted under 5.1, or “extend the Closing Date Deadline . . . by
written notice to Seller prior to the . . . Closing Date Deadline” as permitted
by the Letter Agreement.  Instead, he met
with Mr. Callison, a representative of Maxwell’s, on September 25, 2008 and
told Callison that he was only interested in moving forward under the APA if
the dealership price was reduced. 
According to Robbins, Callison suggested that Robbins not formally
terminate the APA, and that Robbins continue seeking GM approval and propose a
reduced purchase price after the approval was obtained.  After GM approval was received on October 9,
2008, Robbins offered a lower price that was rejected by Maxwell.  On October 16, 2008, Maxwell requested a
closing under the APA, noting that all the conditions had been satisfied.  The following day, Robbins’s attorney sent
written notice that Robbins “has terminated the [APA] . . . due to our client’s
failure to obtain General Motor’s Corporation’s approval . . . by the Closing
Date Deadline (as defined by the [APA]).” That letter also requested immediate
return of the $250,000 earnest money deposit, plus interest.  Maxwell refused to return the earnest money.

3.     The trial court proceedings  

Robbins sued Maxwell, alleging it
breached the APA and seeking return of the earnest money, interest, and
attorneys’ fees.  Maxwell counterclaimed
for breach of the APA, and for a declaratory judgment that Robbins was not
entitled to return of the earnest money. 

Maxwell moved for partial summary
judgment on Robbins’s claim that Maxwell breached the APA by failing to return
the earnest money.  After Maxwell’s
summary judgment motion was on file, Robbins filed an answer to Maxwell’s
counterclaims, pleading the affirmative defenses of estoppel, waiver and
modification, and that the APA was ambiguous. 
Robbins responded to Maxwell’s motion and, in response to the trial
court’s questions at the summary judgment hearing, both parties filed
additional supplemental briefing to address whether Robbins had a “legal
excuse” for not formally terminating, and whether Robbins’s affirmative
defenses to Maxwell’s counterclaims impacted whether Maxwell was entitled to
summary judgment.  

On December 7, 2009, the trial
court granted a partial summary judgment in Maxwell’s favor.  On January 19, 2010, Maxwell nonsuited its
pending counterclaims, rendering the court’s partial summary judgment
final.  Robbins appealed.  

Standard of
Review     

We review the trial court’s
decision to grant summary judgment de novo. Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  To prevail on a summary judgment motion, the
movant must demonstrate that there are no genuine issues of material fact and
that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);  City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979) (movant
must conclusively prove all “essential elements of his cause of action or
defense as a matter of law”).  In
deciding whether there is a disputed material fact issue precluding summary
judgment, we must take evidence favorable to the nonmovant as true, indulge
every reasonable inference in favor of the nonmovant, and resolve any doubts in
the nonmovant’s favor. Dorsett, 164
S.W.3d at 661; Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548–49 (Tex. 1985).
 If the movant shows that it is entitled
to judgment as a matter of law, the burden shifts to the nonmovant to present
evidence to raise a material fact issue that precludes summary judgment. See Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).  

 “[A] court interprets a contract by
ascertaining the true objective intentions of the parties, based on the
contract language.” SAS Inst., Inc. v.
Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005) (citing Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)).  A court construes written instruments as a
whole in an effort to harmonize and give effect to all the provisions of the
instrument so that none will be rendered meaningless.  Dorsett,
164 S.W.3d at 662; Shell Oil Co. v. Khan,
138 S.W.3d 288, 292 (Tex. 2004).  Contract
terms are given their “plain, ordinary, and generally accepted meanings unless
the contract itself shows them to be used in a technical or different sense.” Dorsett, 164 S.W.3d at 662. If a
contract is capable of more than one reasonable interpretation, it is
ambiguous; if, however, the contract can be given a certain or definite legal
meaning or interpretation, then it is not ambiguous and we will construe it as
a matter of law. Coker, 650 S.W.2d at
393; Cook Composites, Inc. v. Westlake
Styrene Corp., 15 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2000,
pet. dism’d).

The Parties’
Arguments

Robbins argues that he is entitled
to return of the earnest money because the APA terminated automatically on the
Closing Date Deadline—sixty days
after the APA was executed—because GM
approval had not been received by that date, and because Robbins did not
formally elect to extend the Closing Date Deadline as provided under the Letter
Agreement.  Alternatively, Robbins
contends, if “the APA did not terminate automatically on September 23, 2008,
Maxwell waived and/or is estopped from denying Robbins’s right to receive” the
earnest money.  Finally, Robbins argues
that he raised a fact issue about whether the contract with Maxwell was orally
modified.   

Maxwell argues that the APA
provides for the earnest money to be retained by the seller if Robbins
terminates after all the preconditions to the transaction have been met.  Maxwell also disputes that there is any evidence
in support of Robbins’s waiver or estoppel theories, and that these affirmative
defenses cannot create liability.  Maxwell
further disputes that the contract could be orally modified and argues that, in
any event, the facts even as Robbins alleges them would not amount to a
modification of the agreement.  We agree
with Maxwell and thus affirm the trial court’s summary judgment.

Analysis

Section 5.1 does not, as Robbins
contends, provide for automatic termination of the APA sixty days after the
date of its execution, defined in section 5.1 as the “Closing Date
Deadline.”  Instead, Section 5.1 provides
that after the Closing Date Deadline, “either party may terminate this [APA] by written notice to the other party.”  (emphasis added).  The Letter Agreement further provides that the
buyer, Robbins, “may extend the
Closing Date Deadline . . . by written notice to Seller . .  . for an additional thirty (30) days.”
(emphasis added). 

By its plain language, Section 5.1
obligates both parties to close upon the meeting of certain conditions.  The significance of Section 5.1’s 60-day
Closing Date Deadline is that, if that date is passed without conditions
precedent for closing being satisfied or waived, either party has the option of terminating the parties’ obligations
after that date by providing written
notice.  The Letter Agreement permits—but does not obligate—Robbins to bind both parties for two additional
30-day periods by extending the Closing Date Deadline if GM approval has not yet
been received by the Closing Date Deadline. 
In other words, the Letter Agreement simply provides a mechanism for
Robbins to push into the future the date on which the parties are first permitted,
with written notice, to terminate the APA. 
These provisions are not ambiguous, and nothing in their actual language
supports Robbins’s argument that termination of the APA occurs automatically
after sixty days.  

Robbins would be entitled to return
of the earnest money if he “elect[ed] not to close because of . . . the failure
to satisfy any of the conditions in Section 4.1.1” (i.e., unconditional
approval from GM).  Thus, had Robbins
provided written notice of termination of the APA after the Closing Date
Deadline of September 23, 2008 but before
GM’s approval was received on October 9, 2008, he would have been entitled to
return of the earnest money.  He elected
not to terminate then, instead actively seeking GM’s approval and only
terminating after that approval was received because Maxwell refused to accept
a lower price.  Robbins was not in breach
of the APA by providing written notice of termination after the Closing Date
Deadline because either party could at that time elect to terminate the
agreement.  But because GM’s approval had
been received before Robbins terminated the APA, Robbins failed to satisfy the
condition for return of the earnest money because he did not “elect[] not to
close because” GM approval had not been received.  By that point, GM approval had been granted.  

  The
three cases Robbins cites in support of his interpretation are not on point.  First, he cites Maywood Proviso State Bank v. York State Bank & Trust Company,
an Illinois case, for the proposition that a contract terminates automatically
upon the failure of a condition precedent because the court in that case held
that a bank purchaser’s failure to timely obtain FDIC approval terminated the
purchase agreement.  625 N.E.2d 83, 88
(Ill. App. 1993).  Maywood is not instructive, as (1) it involved different contract terms—a contract that tied regulatory approval to a
set deadline, (2) the buyer tried to revive the contract by waiving the
regulatory approval deadline after
the seller had given written notice of termination of the agreement for
nonperformance, and (3) the contract contained a time-is-of-the-essence
clause.  Id.  

Tiger
Truck, LLC v. Bruce’s Pulp & Paper, LLC, a Beaumont Court of
Appeals case that Robbins cites for the proposition that a party need not
cancel a contract on the first day it is permitted to for termination of a
contract to be timely, is likewise distinguishable.  282 S.W.3d 176, 187–88 (Tex. App.—Beaumont 2009, no pet.).  At issue in Tiger Truck was a provision allowing the buyer to recoup its
earnest money if it terminated a purchase contract pursuant to its termination
terms.  Id. at 186.  The contract
permitted the buyer to terminate the contract if due diligence was not
completed within 60 days.  Id. 
The buyer terminated the contract almost 120 days after the contract was
signed, when the ongoing due diligence indicated environmental problems existed
on the property that could not easily be worked around.  Id.
at 184.  The court held the buyer was
entitled to terminate the contract at that point and recover its earnest
money.  Id. at 187.  Tiger Truck does not involve a situation
in which, as here, the condition precedent in question is met before
termination of a contract and the buyer’s right to recover earnest money is
conditioned upon that condition not
being met.

Zemnovich
v. 2729 Coney Island Ave., LLC—a
New York trial court opinion Robbins cites as “squarely support[ing] Robbins
position that the contract automatically terminated on September 23, 2008 due
to the failure to obtain GM approval and the fact that Robbins’s notice of
termination was after subsequent GM approval is irrelevant”—is likewise inapposite.  See
No. 7739/08, 2009 WL 1777216 (N.Y. Supp. June 22, 2009) (not designated for
publication).  In Zemnovich, a buyer sought termination of a real estate purchase
contract under a 45-day financing contingency. 
Id. at *1.  He received financing, after the 45 days but
before he sought termination the contract, in the form of approval of an
assumption of the seller’s mortgage of $ 1,420,000.  Id.
at *5.  The court held, however, that the
“purchaser’s obligation to purchase under the contract remains conditioned upon
the ‘issuance,’ specifically on or before the Commitment Date, of a ‘written
commitment’ to a first mortgage of $1,575,000.” 
Id.  The court held that a financing commitment of
$1,575,000 was not received, and the buyer was entitled to return of his
earnest money.  Id.  Not only does Zemnovich involve a contract with
different terms, it is not analogous because the condition precedent at issue
in Zemnovich was not satisfied before the buyer terminated the contract and sought
return of his deposit.  

We likewise reject Robbins’s
argument that Maxwell is “waived and/or estopped from denying Robbins’[s] right
to receive the Earnest Money.”   While
this assertion is made in the “Summary of the Argument” section of his
appellant’s brief, his brief contains no citation to any authority related to a
waiver or estoppel theory, and no argument specific to these issues.  See Tex. R. App. P. 38.1(f), (i) (brief
should “state concisely all issues or points presented for review” and “a clear
and concise argument for the contentions made, with appropriate citations to
authorities and to the record”).  We
glean from his arguments below and factual recitation here that his waiver/estoppel
theory is based on his assertion that Maxwell’s representative—when told that Robbins was not interested in
closing at the agreed-upon price—“suggested that Robbins not formally terminate the APA but continue to
pursue GM approval and once approval was obtained propose the lower
price.”  Even taking these assertions as
true, Robbins does not contend that Maxwell’s employee made any representations
related to return of the earnest money. 
For this same reason, we reject Robbins’s argument that he raised a fact
issue as to whether the APA was orally modified.  Robbins’s assertions about Maxwell’s
suggestion, taken as true, would not amount to a modification of the APA, as
Robbins does not allege that Maxwell’s representative said that a lower price
would necessarily be accepted or that he purported to orally alter the earnest
money provisions of the APA.      

Conclusion

 
We affirm the trial court’s summary judgment.  

 


 

 


                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.