**R. CONRAD MOORE & ASSOCIATES, INC., Appellant,**

v.

**Isabel LERMA and Luz Lelia Lerma, Appellees.**

No. 08–96–00152–CV.

Court of Appeals of Texas, El Paso.

March 13, 1997.

Rehearing Overruled May 14, 1997.

Lark H. Fogel, Jeff Pownell, Scherr & Legate, P.C., El Paso, for appellees.

R. Wayne Pritchard, Brandys Carson & Pritchard, P.C., El Paso, for appellant.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is a defendant's appeal from an adverse jury verdict in a contract case. We reverse and render.

### FACTS

On January 30, 1990, the Lermas (Appellees) and R. Conrad Moore & Associates, Inc. (Appellant) entered into an earnest money contract for the purchase of two lots at 1900 Gus Moran in El Paso. The Lermas tendered a check to Moore for $13,500 as part of the earnest money contract. The sale of the lots was contingent upon the Lermas using Moore as a builder. On April 16, 1990, then Lermas and Moore incorporated the previous contract into a new home residential earnest money contract. This contract provided for the construction of a custom home on the lots for a total price, including the lots, of $180,-000. The new contract called for an additional payment of $6,500 earnest money, due upon the Lermas' approval of the house plan. Paragraph 4 of the contract required the following:

> FINANCING CONDITIONS: This contract is subject to approval for Buyer of a *conventional* (type of loan) loan (the Loan) to be evidenced by a promissory note (the Note) in the amount of $ *80,000*, .... Buyer shall apply for the Loan within *15* days from the effective date of this contract and shall make every reasonable effort to obtain approval from *Competitive Mortgage Co.*, as lender, or any lender that will make the Loan....

> If the Loan cannot be approved within *60* days from the effective date of this contract, this contract shall terminate and the Earnest Money shall be refunded to Buyer without delay. [Emphasis added.]

In addition to the standard provision of the preprinted contract, special handwritten provisions were included under Paragraph 11:

> 1) Seller give One Year (1) Builders Warranty and 10–Year H.O.W. warranty

> 2) **On Lot held more than 60 days, Earnest Money is non-refundable.**

> 3) Lot purchase contract dated January 30, 1990 is hereby transferred to this Home construction contract.

> 4) * Balance of Down Payment to be made at time of sale of properties located at 1400 Bodega and 3509 Breckenridge. [Emphasis added.]

Construction on the house began in December 1990, and was completed in the summer of 1991. The Lermas were ultimately denied credit and were unable to close on the house. In September 1991, after demanding the return of their earnest money, they initiated this suit in November 1992. After trial to a jury, the Lermas were awarded $20,000 in damages. The jury found that Moore breached the contract by failing to return the Lermas' earnest money upon the Lermas' failure to get loan approval within the 60 days contemplated by Paragraph 4 of the contract. Moore appeals.

### STANDARD OF REVIEW: LEGAL AND FACTUAL SUFFICIENCY

Moore asserts in its first six points of error that the evidence was legally or factual insufficient to support the jury's findings.

In reviewing a "no evidence" or legal sufficiency claim, we examine only the evidence favorable to the verdict and disregard all evidence to the contrary. *T.O. Stanley Boot Company, Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992); *Furr's, Inc. v. Logan*, 893 S.W.2d 187, 190 (Tex.App.—El Paso 1995, no writ). We may reverse on a no evidence point only if the record reflects no evidence necessary to support a vital fact,

or if the evidence raises only a suspicion of the fact's existence. *Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991); *Furr's, Inc.,* 893 S.W.2d at 190. In reviewing a factual sufficiency or great weight and preponderance claim, we examine all evidence presented at trial, and may reverse only if the challenged finding is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Furr's, Inc.,* 893 S.W.2d at 190. We may not substitute our own conclusions for those of the jury, and we may not resolve conflicts in the evidence or pass upon the credibility of the witnesses. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951); *Furr's, Inc.,* 893 S.W.2d at 190. Where the evidence is conflicting, the jury's verdict is generally conclusive on the matter. *Id.*

In reviewing a "matter of law" challenge, we first examine the record to see if any evidence supports the finding, ignoring all evidence to the contrary. If no evidence supports the finding, we then determine whether the evidence conclusively establishes its converse. If so, we must reverse. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *Furr's, Inc.,* 893 S.W.2d at 190.

### *Loan Approval*

In its first point of error, Moore asserts the evidence is legally and factually insufficient to support the jury finding that the Lermas failed to get loan approval for the purchase of the home. After a diligent search of the record, we have been unable to find any evidence that would support a finding that the Lermas did get financing for the purchase. Moore testified that "someone" at Sun World Savings informed her that the Lermas were approved within the 60 day period. However, Ms. Nancy Montes of Mortgage Plus, who took the Lermas' loan application, testified that they were never approved. She stated that a "take out" letter sent out in October 1990 was not final loan approval but a prequalification report that indicates a conditional approval subject to verification and continuing good credit. Ms. Montes further testified that she exhausted all her sources in attempting to get

financing for the Lermas. Ultimately, the Lermas were denied credit and were unable to close on the house. The record overwhelmingly supports the jury's finding that the Lermas did not get loan approval for the purchase of the house. Therefore, Moore's first point of error is overruled.

### *Waiver*

In its second point of error, Moore asserts that the evidence establishes as a matter of law that the Lermas waived any right to have the earnest money refunded. We agree.

Any contractual right can be waived. *Purvis Oil Corp. v. Hillin,* 890 S.W.2d 931, 937 (Tex.App.—El Paso 1994, no writ). A waiver is an intentional release, relinquishment, or surrender of a known right. *Id.* The following elements must be met to find waiver: (1) a right must exist at the time of the waiver; (2) the party who is accused of waiver must have constructive or actual knowledge of the right in question; and (3) the party intended to relinquish its right. *See Riley v. Meriwether,* 780 S.W.2d 919, 922 (Tex.App.—El Paso 1989, writ denied). Intentional relinquishment of a known right can be inferred from intentional conduct which is inconsistent with claiming the contractual right. *Id.*

It has been conclusively established that the Lermas did not obtain financing for the purchase of the house from Moore. Paragraph 4 of the contract clearly states that if the purchasers are unable to obtain financing within 60 days of the effective date of the contract, they had a right to have their money returned. Thus, on June 15, 1990, the Lermas had a right to the return of their earnest money. The Lermas' intention to relinquish their right to the return of the earnest money, however, is clearly established by their conduct after June 15. Between the date the contract was signed and the date construction began on the house, the Lermas participated in the design of the house, approved the blueprints in July 1990, and tendered an additional $6,500 in earnest money to Moore in October. The Lermas were then conditionally approved for

financing which allowed Moore to get a construction loan to begin building the house.

Additionally, after construction of the house began in December 1990, the Lermas monitored its progress on a daily basis. In March 1991, they requested and paid for an upgrade in tile for the house. In June, Isabel Lerma executed a promissory note in the principal amount of $6,000 to Moore to pay for the addition of another room to the house. During this same time period, the Lermas sold their home and another property, as agreed in the contract, to fund the down payment. Mr. Lerma testified that he fully intended to buy the house that Moore was building, and at no time prior to August 1991 did he consider the contract terminated. Mrs. Lerma also testified that until August 1991, they wanted and intended to purchase the home.

Although the Lermas claim that they were unaware that they could get their money back on that date, both Mr. and Mrs. Lerma signed the contract. Mrs. Lerma testified that she read the contract. Mr. Lerma was not sure if he read the contract, but testified that no one prevented him from doing so. A person who signs a contract is presumed to know and understand its contents; absent a finding of fraud, failure to apprehend the rights and obligations under the contract will not excuse performance. See G–W–L, Inc. v. Robichaux, 643 S.W.2d 392 (Tex.1982); Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962). There is no evidence of fraud, actual or constructive, on the part of Moore. Thus, we conclude the Lermas had knowledge of their right to a refund of the earnest money on June 15.

There is no evidence to support the jury's finding that the Lermas did not waive the right to have the earnest money refunded. The Lermas' intentional conduct after the right to the return of the earnest money arose was inconsistent with claiming that right. They intentionally relinquished a known right, and therefore, we find as a matter of law, that the Lermas waived Paragraph 4 of the contract, and the contract continued in effect, including Paragraph 11 allowing Moore to retain the earnest money on the lots.

The Lermas argue that Paragraph 4 operates as a condition precedent. When the Lermas failed to obtain financing within 60 days, the contract, including any forfeiture provisions, terminated. Thus, the Lermas assert Paragraphs 16 and 11 never became effective. Many Texas cases have construed provisions similar to Paragraph 4 as conditions precedent. See e.g., Knox v. Townes, 470 S.W.2d 290, 291 (Tex.Civ.App.—Waco 1971, no writ)(clause stating contract is contingent on obtaining financing creates a condition precedent that must be met before buyer is obligated to perform contract); Watkins v. Williamson, 869 S.W.2d 383, 384 (Tex.App.—Dallas 1993, no writ)(residential earnest money contract contingent on satisfactory financing contains a condition precedent; the contract depends upon the condition being met); Berman v. M.O. Rife, III, 644 S.W.2d 574, 575–76 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.)(contract "subject to approval" of a conventional loan is condition precedent inserted for benefit of buyer to avoid forfeiture or penalty). We agree with the Lermas that Paragraph 16, a simple default clause included in the pre-printed sections of the contract, may not have become effective in the event the Lermas failed to obtain financing within 60 days. In this case, however, we have an additional handwritten provision that is somewhat out of the ordinary and distinguishable from the clauses considered in the cases finding conditions precedent. Under Paragraph 11, the "special provisions" section of the contract, the parties added the phrase "on Lot held more than 60 days, Earnest Money is non-refundable." This brief passage is less than a model of clarity. At first blush, it appears in direct contradiction to Paragraph 4, the termination clause.

If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968); First City Nat'l Bank of Midland v. Concord Oil Co., 808 S.W.2d 133, 137 (Tex.App.—El Paso 1991, no writ). There is no allegation in this case that the earnest

money contract is ambiguous, and it does not appear to us to be so. Generally, the parties to a contract intend every clause to have some effect and the Court may not ignore any portion of the contract unless there is an irreconcilable conflict. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex.1983); *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954). In the interpretation of contracts, the primary concern of courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Duracon, Inc. v. Price*, 817 S.W.2d 147, 149 (Tex.App.—El Paso 1991, writ denied). This requires the court to examine and consider the entire instrument and reach a decision so that none of the provisions will be rendered meaningless. *Id.*

By its wording, Paragraph 11 is not merely a forfeiture clause subject to the condition precedent stated in Paragraph 4. Paragraph 11 envisions the non-occurrence of the condition (in this case financing obtained within 60 days), references the 60–day provision, and provides for continuation of the contract beyond 60 days. To give effect to both provisions and render neither meaningless, we must construe the handwritten provision to allow the buyer, at its option, to continue the contract after 60 days in the absence of financing. A condition precedent like any other provision of a contract can be waived. *Purvis Oil Corp.*, 890 S.W.2d at 931. Thus, if financing were not obtained in 60 days, the Lermas could do nothing, the contract would terminate, and the Lermas would be entitled to return of the earnest money. On the other hand, the Lermas could take action to have the lot "held more than 60 days" thereby waiving the right to the return of the earnest money.

The record establishes that the Lermas chose the latter option. They worked with Moore on the design of the house, tendered additional earnest money four months after the contract would have expired under Paragraph 4, contracted with Moore to increase the square footage of the house, paid for tile upgrades, and sold both the home they were living in and another property in anticipation of closing on the house when it was complet-ed. The record therefore conclusively establishes that the Lermas waived termination of the contract and instead continued to operate pursuant to the contract under Paragraph 11.

■■■■■ The Lermas further assert that even if we find waiver of Paragraph 4, Paragraph 11 is unenforceable as a penalty. The Lermas characterize Paragraph 11 as an attempted liquidated damages clause. Under Texas law, a liquidated damages provision will be enforced only if the court finds (1) the harm caused by the breach is incapable or difficult of estimation, and (2) the amount of liquidated damages is a reasonable forecast of just compensation. *Rio Grande Valley Sugar Growers, Inc., v. Campesi*, 592 S.W.2d 340, 342 n. 2 (Tex.1979); *Baker v. Int'l Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no writ)(opinion on rehearing). The Lermas argue that Moore failed to establish these elements. The party asserting that a liquidated damages clause is unenforceable as a penalty, however, bears the burden of proof. *Id.* The Lermas failed to plead penalty. Although they requested a trial amendment, the trial court denied the amendment and the Lermas do not attack that ruling on appeal. Further, the Lermas did not request, or object to the absence of, a jury question or instruction on the elements of penalty.

■■■■■ The Lermas suggest that a jury question was unnecessary because whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court. They argue that the trial court in this case implicitly found Paragraph 11 an unenforceable penalty as a matter of law when it entered judgment in favor of the Lermas. While the determination between an unenforceable penalty and an enforceable liquidated damages provision is generally a question of law for the court, sometimes the factual underpinnings of the elements must be resolved before the legal question can be decided. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991). This is such a case. The amount the Lermas paid in earnest money is not, on its face, necessarily disproportionate to actual damages Moore allegedly suffered as the result of the Lermas' failure

to purchase the custom built home. Thus, at least the fact of Moore's actual damages should have been determined by a jury before the trial court could consider whether the liquidated damages were a reasonable forecast of just compensation. *See Phillips,* 820 S.W.2d at 788–89. Even if fact issues did not exist in this particular context, we do not find that the trial court's entry of judgment implicates the penalty issue in any way. The trial court entered judgment on jury findings that the Lermas did not obtain financing by the deadline provided in Paragraph 4, and that the Lermas did not waive their right to return of the earnest money. An interpretation of Paragraph 11 is unnecessary to those particular jury findings. Moreover, we are hard pressed to find that the trial court "implicitly" found Paragraph 11 unenforceable as a penalty when it had refused to allow the Lermas to plead penalty by trial amendment.

We must reject the Lermas' arguments and affirm Moore's second point of error.

### Moore's Attorney's Fees

■ In its eleventh and twelfth points, Moore alleges error in the trial court's failure to allow evidence of, and award, Moore's attorney's fees. Moore argues that the earnest money contract provided for attorney's fees to the prevailing party in the event of litigation. We find, however, that Moore failed to plead for attorney's fees. A judgment must be supported by the pleadings and, if not so supported, it is void. *State v. Estate of Brown,* 802 S.W.2d 898, 900 (Tex.App.—San Antonio 1991, no writ). A party may not be granted relief in the absence of pleadings to support that relief. *Stoner v. Thompson,* 578 S.W.2d 679, 682, 683–84 (Tex.1979); *Estate of Brown,* 802 S.W.2d at 900. A judgment, absent issues tried by consent, must conform to the pleadings. *Estate of Brown,* 802 S.W.2d at 900. Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity. *Id.* In this case, there is no pleading to support an award of attorney's fees. Ac-

cordingly, we overrule Moore's eleventh and twelfth points of error.

### The Court Need Not Reach the Remainder of Moore's Points

In its third through tenth points, Moore challenges the sufficiency of the evidence to support the jury's damages and unjust enrichment findings, the trial court's failure to disregard jury findings, and the trial court's calculation of prejudgment interest. Our disposition of Moore's second point of error, and of the Lermas' second cross-point, renders it unnecessary for us to reach Moore's Points of Error Three through Ten. Accordingly, we do not reach those points.

### The Lermas' Cross–Points

The Lermas raise three cross-points.

#### The Lermas' Attorney's Fees

In their first cross-point, the Lermas assert error in the trial court's failure to award them their attorney's fees. Section 38.001 of the Texas Civil Practice and Remedies Code provides for recovery of attorney's fees in addition to the amount of a *valid* claim for an oral or written contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). The contract in this case entitled the *prevailing* party in any legal proceeding to attorney's fees from the non-prevailing party. We have found, however, that the Lermas should not prevail on their causes of action. Accordingly, we overrule the Lermas' first cross-point.

#### Recovery Under Unjust Enrichment

■ In their second cross-point, the Lermas argue that even if we find they cannot prevail on their contract cause of action, they can recover under an unjust enrichment theory. In addition to the contract claim, the jury also found in favor of the Lermas on their unjust enrichment cause of action. The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another are not governed by a contract between the contending parties. *Burlington Northern R. Co. v. Southwestern Elec. Power Co.,* 925 S.W.2d 92, 96–97 (Tex. App.—Texarkana 1996, no writ). Restitution

under the principles of unjust enrichment is appropriate where a contract is unenforceable, impossible, not fully performed or void for other legal reasons. *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.,* 830 S.W.2d 313, 319 (Tex.App.—Austin 1992, no writ). As discussed under Point of Error Two, a valid enforceable contract existed between the Lermas and Moore, thus restitution under unjust enrichment is not an appropriate remedy. Accordingly, we overrule the Lermas' second cross-point.

*Recovery Under Contract*

In their third cross-point, the Lermas argue that they are entitled to judgment on their contract cause of action. Under Moore's second point of error, however, we found that the evidence established as a matter of law that the Lermas waived their right to recover the earnest money under the contract. Accordingly, we overrule the Lermas' third and final cross-point of error.

## CONCLUSION

Having sustained Moore's second point of error, we reverse the judgment of the trial court and render judgment that the Lermas take nothing on their contract and unjust enrichment causes of action.