**Opinion issued October 11, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-11-00231-CV

———————————————

**JONG W. KIM AND SUSAN KIM, Appellants**

**V.**

**JIN AHN, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2006-36177**

---

## MEMORANDUM OPINION

This is an appeal from a judgment rendered in favor of Jong W. Kim and

Susan Kim. Jin Ahn sued the Kims for breach of an exclusive listing agreement

for the sale of a gas station owned by the Kims. After a jury trial, and after both

parties filed several post-trial motions, the trial court rendered judgment in favor of

the Kims, ordering that Ahn take nothing on her claims and the Kims recover $14,800 in attorney's fees for trial, plus conditional awards for appellate attorney's fees in the event that Ahn unsuccessfully appealed the judgment. Ahn contends that the trial court erred in submitting an affirmative defense to the jury and that the evidence is legally and factually insufficient to support the jury's answers to questions about the Kims' affirmative defenses. In their own appeal, the Kims contend that the evidence is insufficient to support the amount of attorney's fees found by the jury and that the trial court erred by requiring the Kims to segregate attorney's fees and reducing the jury's awards of attorney's fees on that basis despite the fact that Ahn made no timely objection. We affirm.

## Background

In October 2004, Susan Kim met with realtor Jin Ahn to discuss the sale of a gas station owned by Susan and her husband Jong Kim. Kim told Ahn that her husband was sick and that they could no longer run the gas station. After Susan told Ahn the gas station's approximate net profit, Ahn calculated a sales price of $1.3 million and told Susan that she would market the gas station by advertising in the Korean papers every week. Ahn then gave Susan an exclusive listing contract, which Susan returned to Ahn a couple weeks later after she and Jong had signed it.

The contract appointed Ahn to be the exclusive real estate agent for the sale of the Kims' gas station from November 11, 2004 to November 11, 2005. It also

2

required Ahn to "make reasonable efforts and act diligently to sell the Property." In the event of a legal proceeding between the Kims and Ahn, the contract provided that the "prevailing party" would "recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees."

In order to market the property, Ahn placed advertisements in Korean and Chinese weekly newspapers and placed a listing on LoopNet, a major commercial website. In August 2005, Ahn was having problems with the newspaper *Korean Journal* and switched over to *Korean World* as the primary newspaper in which she advertised. According to Ahn's testimony, her advertisements for the gas station were delayed in appearing in *Korean World* for two weeks. Ahn testified that other than these two weeks, the gas station was advertised in a Korean newspaper every week. However, Kim testified that the advertisement was not consistently in the papers. According to Kim, it would be there one week and gone the next. Ahn introduced several newspapers advertisements listing the station, but the latest date shown on any of them was April, 2005.

Kim also testified that Ahn's advertisements for the gas station were inaccurate. Kim said that Ahn had listed it as being next to I-45, even though the gas station was actually next to highway 225. Ahn admitted that she listed it as being next to I-45, but she explained she was intentionally vague so she could attract people looking in the I-45 area.

3

In August 2005, Ahn received a phone call from Kim, who wanted to know if there were any offers for the gas station. Ahn told her that there were none, and Kim told Ahn that she was anxious because her husband's sickness was worsening. Kim then told Ahn that she wanted to terminate the contract. According to Kim's testimony, Ahn said, "[O]k, I understand." Kim then asked Ahn for written confirmation of the contract's termination, and Ahn told her that she would send one. After Ahn failed to send a confirmation, Kim called her again. Kim testified that Ahn told her, "[J]ust fax over to my husband's office, that's good enough for me." However, Ahn testified that she only told Kim she would take a look at the contract and think about it. According to Ahn, she did not say anything that would have led Kim to believe that she had agreed to terminate the contract.

On September 1 2005, Kim sent Ahn a signed fax that said, "I'm terminating our contract which we signed 11-01-04. Even though we signed for one year you agreed to terminate our contract." Ahn said that she did not respond to the fax, but continued to advertise the property. However, a LoopNet page from September 15, 2005 identified the property as "off the market." Furthermore, Ahn no longer called the Kims after September 1, 2005. And she testified, "If you put me on the spot probably I didn't do my due diligence in there . . . . I kind of lost interest, to be honest with you. And also at the same time I had very, very difficult pregnancy."

4

According to Susan's testimony, after Ahn agreed to terminate the contract, Kim called her friend Janie Leung, who was a loan broker. Leung then put the Kims in contact with Lee Kyung Eun and Lee Dong Sun, who were looking to buy a gas station. Lee Kyng Eun testified that they had not spoken to the Kims until sometime in September 2005. The Kims entered into a formal contract to sell the gas station to the Lees on November 15, 2005.

After Ahn discovered that the Kims sold their gas station to the Lees, she filed suit against the Kims. Ahn alleged that the Kims breached the exclusive listing contract, and she sought recovery of $65,100 for her broker's fee, which was six percent of the sales price. (Although Ahn originally listed the property for $1,300,000, at trial the parties stipulated that the Leungs purchased the property for $1,085,000, and Ahn sought her broker fee based on that sale price.) In response, the Kims argued that Ahn had waived her right to collect a broker fee and that she had committed the first breach of the listing contract by failing to use reasonable efforts in marketing the gas station. The trial court submitted to the jury an initial question on Ahn's alleged waiver and a second asking whether Ahn committed a prior material breach of the listing agreement. In its answer to question one, the jury found that Ahn waived the remaining term of the contract for both Jong and Susan Kim. In its answer to question two, the jury found that Ahn failed to comply with a material obligation of the contract prior to the date that the Kims first

5

discussed the sale of the gas station with the Lees. In its answer to question seven, the jury awarded the Kims $16,500 in attorney's fees. Although Ahn objected to the submission of question one, she did not object to the submission of any other question.

After trial, Ahn objected to entry of judgment based on the jury's findings on attorney's fees. Specifically, Ahn complained that the Kims did not segregate recoverable attorney's fees from unrecoverable fees. After the trial court held a hearing at which the Kims' attorney, T. Michael Neville, testified, the trial court reduced the Kims' fee award from $16,500 to $14,800. It also awarded contingent appellate attorney's fees, which the jury had declined to award.

On appeal, Ahn argues that the trial court abused its discretion in submitting the waiver question to the jury. Even if question one was properly submitted, Ahn claims there is insufficient evidence to support a finding of waiver. Furthermore, Ahn contends that, even if there is sufficient evidence that Ahn waived the contract, the evidence supports waiver only as to Susan and not her husband Jong. Ahn also asserts that the trial court should not have submitted the question of Ahn's material breach to the jury and that there is insufficient evidence to support the jury's finding that Ahn breached.

The Kims raise three issues on appeal. First, they argue that the trial court erred in denying their motion for judgment notwithstanding the verdict on

6

attorney's fees. Second, they claim the evidence is factually insufficient to support the jury's attorney's fees award of $16,500. Lastly, they contend that the trial court erred in ordering the Kims to segregate their attorney's fees in a post-verdict bench trial and in reducing the fee award to $14,800. Ahn responded that the Kims were not entitled to attorney's fees because they were not prevailing parties in the lawsuit.

## Waiver

### A.     Submission of Waiver to the Jury

Within her second issue, Ahn argues that the trial court erred in submitting question one to the jury. Question one asked whether Ahn waived the remaining term of the contract for either Jong Kim or Susan Kim. According to Ahn, the doctrine of waiver does not apply to their contract because exclusive listing agreements are governed by the statute of frauds and, here, there was no modification of the agreement that satisfied the statute's requirements.

#### 1.     Standard of Review

We review the trial court's submission of instructions and jury questions for an abuse of discretion. *Moss v. Waste Mgmt. of Tex., Inc.*, 305 S.W.3d 76, 81 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without

7

reference to any guiding rules or principles. *Id.* A trial court has wide discretion in submitting instructions and jury questions. *Id.*

## 2. Analysis

The Texas Business and Commerce Code section 26.01 provides that certain types of agreements, such as contracts for the sale of real estate, are not enforceable unless the agreement is in writing and signed by the person to be charged or his authorized representative. TEX. BUS. & COM. CODE ANN. § 26.01 (West 2005). Ahn argues that because the exclusive listing contract is governed by this statute, she cannot waive her obligations under the contract. To support her position, Ahn points to several cases holding that contracts governed by the statute of frauds cannot be modified or rescinded unless the modification is in writing and signed by both parties. *See Givens v. Dougherty*, 671 S.W.2d 877, 878 (Tex. 1984) (holding that the statue of frauds prevents exclusive listing contract from being orally modified or rescinded); *Denman v. Hall*, 193 S.W.2d 515, 636 (Tex. 1946) (holding that statue of frauds prevents parol evidence from establishing any oral condition to exclusive listing contract).

However, waiver is a doctrine distinct from modification or rescission, as it is unilateral and does not "require special tokens of reliability, such as a writing, consideration, reliance, judicial screening, or a heightened standard of proof." Richard A. Lord, WILLISTON ON CONTRACTS § 39.16 (4th ed. 2007). While the

8

statute of frauds prevents oral modification or rescission of exclusive listing contracts, "any contractual right can be waived," even if it's governed by the statute of frauds. *R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 93 (Tex. App.—El Paso 1997, writ denied); *see also SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 284–85 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding fact issue existed as to whether party waived its right under earnest money contract for sale of real estate). Because Ahn relies on cases addressing modification and rescission, which are separate legal doctrines, we conclude that she has not shown that the trial court abused its discretion in submitting the question of waiver to the jury.

We overrule this portion of Ahn's second issue.

## B. Sufficiency of the Evidence to Show Waiver

Within her second issue, Ahn also argues that the trial court erred in failing to grant her motion for judgment notwithstanding the verdict because there was insufficient evidence to support the jury's finding of waiver.

### 1. Standard of Review

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Williams v. Dardenne*, 345 S.W.3d 118, 123 (Tex.

9

App.—Houston [1st Dist.] 2011, pet. denied). Ahn was entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law and evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.*

### 2. Analysis

"A party establishes waiver by demonstrating (1) the express renunciation of a known right or (2) silence or inaction for so long as to show the intent to yield a known right." *SP Terrace*, 334 S.W.3d at 284. Waiver can also result from acts that induce the other party to believe that waiver has occurred. *Id.*; *see also KMI Cont'l Offshore Prod. Co. v. ACF Petrol. Co.*, 746 S.W.2d 238, 243 (Tex. App.—Houston [1st Dist.] 1987, writ denied) ("[A] waiver can occur if a party knowingly possessing the right acts in such a manner that the party misleads the opposing party into believing that a waiver has occurred.").

Ahn cites *Aguiar v. Segal*, 167 S.W.3d 443 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), to support her contention that there is insufficient evidence to support the jury's finding of waiver. In *Aguiar*, the buyers of several apartment complexes failed to obtain financing by the closing date specified in the contracts. *Id.* According to testimony by the sellers and the real estate agent, the

sellers agreed to extend the contracts for one week. *Id.* at 453–54. At the end of the week, the buyers still had not obtained financing and the sellers terminated the contracts. *Id.* The trial court found that the sellers waived their right to terminate the contracts because they "never objected or complained about any delay in obtaining a loan commitment" and "elected by their silence, conduct, and words to treat the contract as continuing." *Id.* at 453. The Fourteenth Court of Appeals reversed, holding that there was insufficient evidence to support the finding that the sellers waived their right to terminate. *Id.* at 454–55. The Court noted that the evidence showed that the sellers were not silent. *Id.* at 454. Rather, they had orally agreed to a one-week extension of the closing date. *Id.*

Ahn also relies on *Tiger Truck, LLC v. Bruce's Pulp and Paper, LLC*, 282 S.W.3d 176 (Tex. App.—Beaumont 2009, no pet.). In *Tiger Truck*, a contract for the sale of real estate gave the buyer, Tiger Truck, sixty days to conduct due diligence. *Id.* at 179. The contract allowed Tiger Truck to terminate the contract if it could not meet certain due diligence review items within sixty days. *Id.* Tiger Truck obtained an environmental assessment of the property days before the due diligence period expired, which showed contamination on the property from underground petroleum tanks. *Id.* at 184. As a result, Tiger Truck continued its investigation of the property after the close of the due diligence period, but it eventually terminated before the closing date. *Id.* at 184–85. The Ninth Court of

11

Appeals held that Tiger Truck's continuation of due diligence after the close of the designated period was not sufficient evidence that it waived its right to terminate. *Id.* at 186. According to the Court, although the evidence showed that Tiger Truck did not terminate the contract at the earliest opportunity, none of its behavior showed an intention to waive its right to terminate. *Id.* Rather, it only showed that Tiger Truck delayed exercising its right to terminate until it determined that it could not work around the environmental issues with the property. *Id.*

In contrast, in *SP Terrace*, this court held that the seller of subdivision lots, SP Terrace, had put forth enough evidence showing waiver to create a fact issue for the jury. *SP Terrace*, 334 S.W.3d at 285. In that case, the contract gave SP Terrace until December 31, 2005 to file a subdivision plat. *Id.* at 279. If SP Terrace failed to do so, the buyer, Meritage, could terminate the contract. *Id.* On November 30, SP Terrace was ready to file the plat. *Id.* at 279–80. However, Meritage asked for changes to the plat and, according to testimony, orally agreed to a six-month extension of the filing deadline. *Id*. at 280. Meritage continued to participate in meetings with SP Terrace representatives and work with SP Terrace on further changes after the December 31 deadline. *Id.* Before the six-month extension passed, Meritage informed SP Terrace that it was terminating the contract because SP Terrace had not met the December 31 deadline to file the plat. *Id.* We held that because of the testimony showing that Meritage extended the

12

contract for six months and continued to work with SP Terrace after the December 31 deadline, there was sufficient evidence to create a fact issue for the jury on waiver. *Id.* at 285.

This case is distinguishable from *Aguiar* and *Tiger Truck*. In those cases, the evidence failed to show statements or actions inconsistent with the parties' rights under the contract. Rather, the seller's oral agreement to a one week extension in *Aguiar* and the buyer's continuation of due diligence in *Tiger Truck* were consistent with their rights to terminate. However, in this case, as in *SP Terrace*, there is evidence of an oral waiver and subsequent affirmative actions demonstrating that a waiver occurred. Susan Kim testified that she asked to terminate the contract and Ahn agreed, stating she would send a termination letter. Later, Kim contacted Ahn again who said she was busy and asked Kim to send a termination letter to Ahn's husband, who was also Ahn's attorney. This testimony and the fax sent by Susan Kim are some evidence that Ahn expressly waived the contract. Although Ahn attacks this evidence as "self-serving," the jury, as the sole judge of the credibility of witnesses and the weight to be given to their testimony, was entitled to credit Kim's testimony and give it greater weight. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Ahn's subsequent actions also support the jury's finding that a waiver occurred. Ahn did not advertise the gas station in the newspapers consistently. The listing that Ahn

13

had placed on the LoopNet page had been changed to show the gas station as off the market. Ahn ceased communications with the Kims and even admitted, "I probably didn't do my diligence in there." Viewing this evidence in the light most favorable to the verdict, the evidence to support the jury's finding that waiver occurred is more than a mere scintilla, and thus is legally sufficient to support the verdict. Accordingly we hold that the trial court properly denied Ahn's motion for judgment notwithstanding the verdict. *See SP Terrace*, 334 S.W.3d at 279.

We overrule this portion of Ahn's second issue.

## C. Sufficiency of the Evidence to Show Waiver for Jong Kim

In her first issue, Ahn argues that, even if there is sufficient evidence to show a waiver occurred, this evidence of waiver applied only to Susan. According to Ahn, there is no evidence to show a waiver with respect to Jong.

However, there is evidence that Ahn orally waived the contract for Jong, and Ahn's subsequent actions demonstrate that the waiver applied to Jong. While Susan may not have explicitly told Ahn that she and Jong both wanted to terminate the contract, Kim told Ahn that she wanted to terminate because of her husband's medical condition. Ahn's conduct in response to this statement implies that Ahn waived the contract for both Kim and Jong when she orally consented to Kim's request and Ahn subsequently behaved in a manner inconsistent with exercising her rights under the contract. After September 1, 2005, Ahn ceased to

14

communicate with either Kim or Jong, and she removed the listing from LoopNet. This behavior is not consistent with Ahn's contention that the contract between Jong and herself remained in effect. Viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that Ahn's waiver of her rights under the exclusive listing contract applied to Jong. *See SP Terrace*, 334 S.W.3d at 279.

We overrule Ahn's first issue.

## Material Breach

### A. Submission of Material Breach to the Jury

In her fourth issue, Ahn argues that the trial court erred in submitting question two to the jury. Question two asked whether Ahn breached a material term of the contract before the Kims began discussing the sale of the gas station with the Lees. According to Ahn, this question was improper because it did not specifically ask when Ahn breached.

A failure to object to a jury question waives review of that complaint on appeal. *See* TEX. R. CIV. P. 274 ("Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections"); *Sturm v. Muens*, 224 S.W.3d 758, 768 n.4 (Tex. App.—[14th Dist.] 2007, no pet.) ("[F]ailure to raise a complaint at trial to a jury charge or to the judgment waives review of that complaint on

15

appeal."). Ahn failed to object to the submission of question two. Consequently, she has not preserved the issue for appeal.

We overrule Ahn's fourth issue.

## B. Sufficiency of the Evidence to Show Ahn's Material Breach

In her third issue, Ahn argues that, even if the question of material breach was properly submitted, the trial court erred in denying Ahn's motion for judgment notwithstanding the verdict. According to Ahn, there is no evidence to support the jury's finding that Ahn materially breached the contract before the Kims began discussing the sale of the property with the Lees. However, the Kims argue that there was sufficient evidence to show that Ahn failed to use "reasonable efforts" and "act diligently to sell the Property" as required by the contract.

### 1. Standard of Review

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard, crediting evidence favoring the jury verdict if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Dardenne*, 345 S.W.3d at 123. Ahn was entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law and evidence from giving weight to the only evidence offered to prove a vital fact; (3) the

16

evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.*

## 2. Analysis

Whether a party has used "reasonable efforts" to fulfill its contractual duties is usually a question of fact for the jury. *Fingold v. Cook*, 902 S.W.2d 579, 582 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *see also DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 174 (Tex. App.—Fort Worth 2012, no pet.) ("Whether a contractual best efforts obligation has been met or fulfilled is usually a question of fact because it is heavily dependent upon the particular circumstances of the case."). *Fingold* demonstrates the fact-intensive nature of the inquiry. 902 S.W.2d at 580. In that case, Cook and Fingold entered into an earnest money contract. *Id.* at 580. Under the contract, Fingold, who was the buyer of the property, had to "make every reasonable effort" to obtain financing under specified terms. *Id.* If Fingold failed to obtain such financing, he would get back the earnest money. *Id.* Fingold applied for the financing specified by the contract, but his application was denied. *Id.* He did not re-apply to a third party for financing on these terms. *Id.* After Fingold failed to close on the contract, Cook sued Fingold for breach of contract and demanded the earnest money. *Id.* The trial court granted Cook's motion for directed verdict; however, this court reversed. *Id.* We held that whether Fingold used "reasonable efforts" to obtain the financing

17

described in the contract was an issue of fact. *Id.* at 582. Although Fingold applied only once for the specified financing, it could not be said that he failed to use best efforts as a matter of law. *Id.*

In *DaimlerChrysler Motors Co. v. Manuel*, the Second Court of Appeals held that there was legally sufficient evidence to support the trial court's finding that Chrysler failed to meet a contractual best-efforts obligation. 362 S.W.3d at 168. Chrysler entered into a contract to open a new dealership in South Arlington. *Id.* at 168. In the event of a protest from another dealership, Chrysler promised to use its "best efforts to litigate or settle the protest in order to allow the establishment of the dealership." *Id.* at 169. When another dealership filed protest against the South Arlington dealership, Chrysler repeatedly tried to convince the dealership to withdraw the protest and filed a suit in federal court for an injunction and to compel arbitration. *Id.* at 175–76. However, Chrysler did not try to settle for nine months. *Id.* at 175. The court held that Chrysler's pursuit of litigation at the exclusion of settlement was sufficient evidence that Chrysler did not use best efforts. *Id.* at 176–77. Rejecting Chrysler's argument that they had the discretion to litigate or settle, the Court noted that Chrysler failed to settle even after the federal district court denied injunctive relief and their motion to compel arbitration. *Id.*

18

In an argument similar to Chrysler's, Ahn argues that she had the "exclusive authority to determine the best means to market the listing."  However, Ahn admitted at trial that part of her reasonable efforts obligation was to market the gas station in newspapers and other media sources. The evidence demonstrated that Ahn marketed the gas station inaccurately and inconsistently.  Testimony showed that Ahn marketed it as being located next to I-45, even though it was actually next to highway 225.  Furthermore, Kim testified that the advertisement did not consistently appear in the papers.  Rather, it would be there one week and gone the next.  Of the newspaper ads Ahn introduced as evidence, none were dated later than April 2005.  Viewing this evidence in the light most favorable to the verdict, there is sufficient evidence to support the jury's finding that Ahn breached a material term in the contract by failing to use reasonable efforts to market the gas station.  Accordingly, we conclude the trial court did not err in denying Ahn's motion for judgment notwithstanding the verdict.  *See DaimlerChrysler*, 362 S.W.3d at 168.

We overrule Ahn's third issue.

### Attorney's Fees

In the Kims' appeal, they raise three issues concerning the amount of attorney's fees awarded.  In her appellee's brief, Ahn contends that the trial court

should not have awarded any attorney's fees to the Kims because they were not the prevailing party.

## A. Whether the Kims are Entitled to Attorney's Fees

Attorney's fees are not recoverable unless provided for by statute or contract between the parties. *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). The exclusive listing contract at issue authorized attorney's fees to the "prevailing party in any legal proceeding brought as a result of a dispute under this Listing." Ahn argues that the Kims are not a "prevailing party" because they did not prevail on any cause of action that resulted in the recovery of damages. In support of her argument, Ahn relies on *Intercontinental Group Partnership*, which held that the plaintiff did not "prevail" in the term's ordinary sense because the plaintiff was not awarded any monetary or equitable relief. 295 S.W.3d at 655.

However, as we pointed out in *Silver Lion, Inc. v. Dolphin Street, Inc.*, the Court in *Intercontinental* did not reach the issue of "whether the defendant in that case could instead be the 'prevailing party.'" No. 01-07-00370-CV, 2010 WL 2025749, at *18 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (mem. op.). And we concluded that the defendant who successfully defended against a breach of contract claim was a "prevailing party." *Id.* Other courts of appeals have reached the same conclusion. *See Fitzgerald v. Schroeder Ventures II, LLC*, 345

S.W.3d 624 (Tex. App.—San Antonio 2011, no pet.) (relying on our decision in *Silver Lion* to hold *Intercontinental* did not apply to defendants); *Old HH, Ltd. v. Henderson*, No. 03-10-00129-CV, 2011 WL 6118570, at *4 (Tex. App.—Austin Dec. 9, 2011, no pet.) (mem. op.) (citing *Silver Lion* and *Fitzgerald* and holding that defendants that successfully defended contract action entitled to fees under "prevailing party" language of contract). Because the Kims successfully defended against Ahn's breach of contract claim, they are "prevailing parties" and thus are authorized to recover attorney's fees under the terms of the parties' contract. *See Silver Lion, Inc.*, 2010 WL 2025749 at *18.

**B.    Legal Sufficiency of the Evidence to Support Attorney's Fees**

In the Kims' first issue, they contend the trial court erred in failing to grant their motion for judgment notwithstanding the verdict as to the fee award. The Kims argue that there is insufficient evidence to support the jury's answer to question seven, which awarded them $16,500 in attorney's fees through trial. According to the Kims, because their attorney presented uncontroverted testimony that $56,100 was a reasonable fee, the evidence established their entitlement to an award of $56,100 as a matter of law.

**1.    Standard of Review**

We review the grant or denial of a motion for judgment notwithstanding the verdict under a legal-sufficiency standard. *Williams*, 345 S.W.3d at 123. The

Kims were entitled to judgment notwithstanding the verdict if the record shows: (1) a complete lack of evidence of a vital fact; (2) the trial court is barred by the rules of law and evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Williams*, 345 S.W.3d at 123.

### 2. Analysis

The reasonableness of attorney's fees is ordinarily left to the fact finder, and a reviewing court may not substitute its judgment for the jury's. *Smith v. Patrick W.Y. Tarn Trust*, 296 S.W.3d 545, 547 (Tex. 2009). Factors to be considered in determining the amount of attorney's fees to be awarded include the following: (1) the time and labor required, novelty and difficulty of the question presented, and the skill required; (2) the likelihood that acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *See Smith*,

296 S.W.3d at 547 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

The general rule is that an interested witness's testimony on the reasonableness of attorney's fees does no more than raise a fact issue to be determined by the jury. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990). However, a court may award attorney's fees as a matter of law when the testimony on fees "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon." *Smith*, 296 S.W.3d at 547 (quoting *Ragsdale*, 801 S.W.2d at 882). The Supreme Court explained, however:

> [W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed. For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact.

*Id.* at 547–48 (quoting *Ragsdale*, 801 S.W.2d at 882). *Compare McMilon v. Turbomach. Parts, Inc.*, No. 01-94-00960-CV, 1998 WL 417707 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (mem. op.) (holding appellant established reasonableness of requested attorney's fees as matter of law where appellant's attorney gave uncontroverted testimony of total hours spent and hourly rate and no evidence supported jury's reduction of fees from attorney's clear and

23

uncontroverted testimony) *with Rosenblatt v. Freedom Life Ins. Co. of Am.*, 240 S.W.3d 315, 321–22 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding appellant's attorney had not established reasonableness of requested fees as matter of law where attorney testified that $500,000 was reasonable fee but provided several possible alternatives to $500,000 award and $500,000 included unrecoverable expenses).

Here, Neville, the Kims' attorney, testified that $56,100 would be a reasonable fee for his work through the end of trial. He stated that his hourly rate was $170, and he estimated 330 hours of work. While Ahn put forth no testimony or other evidence to controvert this testimony, other circumstances show the requested fee was questionable or unreasonable. The amount Ahn sought to recover was $65,100, and the fees sought by the Kims—$56,100—approached the amount in controversy. *See Smith*, 296 S.W.3d at 548 (reasonableness of fee award should be considered in light of amount involved). Additionally, Neville's own testimony cast doubt on the reasonableness of the requested fees. Neville criticized Ahn for having multiple attorneys work on the case when the amount in controversy was only $65,100. And, in his cross-examination of Ahn's principal attorney, Neville asked the attorney how he justified "doubling the hourly rate" by hiring another attorney. Yet, Neville also testified that a reasonable fee for the work he did was $56,100, which was only $13,050 less than the amount of fees

requested by Ahn.  Similarly, Neville's total hours were 330, compared to 399 for the three attorneys Neville suggested were unnecessary.  Considering all the relevant factors, we conclude the attorney's fees evidence was not "clear, direct, and positive, as well as free from contradiction" and did not establish the reasonableness of the Kims' requested attorney's fees as a matter of law.  *See id.*; *Rosenblatt*, 240 S.W.3d at 323; *see also Ragsdale*, 801 S.W.2d at 882.

We overrule the Kims' first issue.

## C.    Factual Sufficiency of the Evidence to Support Attorney's Fees

The Kims next argue that the trial court erred in denying their motion for a new trial on attorney's fees.  According to the Kims, even if Neville's testimony did not establish the reasonableness of the requested attorney's fees as a matter of law, the evidence is factually insufficient to support the jury's award of only $16,500 in attorney's fees.

### 1.    Standard of Review

In reviewing a factual sufficiency challenge to a finding on the reasonableness of attorney's fees, we examine all of the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Cullins v. Foster*, 171 S.W.3d 521, 538 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

## 2. Analysis

As stated above, the reasonableness of attorney's fees is ordinarily left to the fact finder. *Smith*, 296 S.W.3d at 548. The reviewing court may not substitute its judgment for the jury's, and the fact finder should consider the *Arthur Andersen* factors. *Id.* In *Cullins v. Foster*, the Fourteenth Court of Appeals held that a jury's attorney's fees award of $5,000 was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." 171 S.W.3d at 540. Foster's attorney testified that his rate was $200 an hour and that a reasonable attorney's fee for the hours he worked would be $46,225.05. *Id.* at 537. However, the jury awarded Foster $5,000 in attorney's fees. *Id.* at 539. The Court held that, even though the attorney's testimony failed to establish the reasonableness of the fee as a matter of law, the award was contrary to the "overwhelming weight of the evidence" because no evidence cast doubt on the $200 hourly fee. *Id*. at 539–540.

In contrast, the Fourteenth Court of Appeals in *E&A Utilities, Inc. v. Joe* held that the evidence was factually sufficient to support the jury's award of $2,000 in attorney's fees, even though the requested amount was $11,400. No. 14-08-00890-CV, 2010 WL 2901711 (Tex. App.—Houston [14th Dist.] 2010, no pet) (mem. op.). Citing to *Foster*, the court recognized that the attorney's hourly rate was reasonable because it had not been controverted. *Id.* at *4. However, the court concluded that facts and circumstances weighed against awarding the

requested amount of fees. *Id.* The Court pointed to the attorney's admission that there were few documents filed in the case and that discovery was minimal. *Id.* Moreover, the attorney's fees sought were more than double the quantum meruit award. *Id.*

In this case, Neville testified that $56,100 was a reasonable fee for his work through the end of trial because his hourly rate was $170, and he estimated 330 hours of work. Neville stated that his hourly rate of $170 was on the low side for a case of this type. He further testified that he had been practicing law in Harris County for twenty-six years and that his cases involved contracts or business disputes. This testimony shows the reasonableness of Neville's hourly rate, and there was no other evidence that cast doubt on it. *See Foster*, 171 S.W.3d at 539-40.

However, as in *E&A Utilities*, some evidence did cast doubt on the amount of time Neville worked on the case: 330 hours. First, the amount in controversy was only $65,100. The fact that this amount is so close to the amount Neville requested in attorney's fees tends to cast suspicion on the need to bill 330 hours. *See Smith*, 296 S.W.3d at 548; *Inwood N. Homeowners' Ass'n. v. Wilkes*, 813 S.W.2d 156, 158 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (determining that amount in controversy is attendant circumstance that can cast doubt on reasonableness of requested attorney's fees); *see also Arthur Andersen*, 945

27

S.W.2d at 818 ("amount involved and results obtained" must be considered in determining reasonableness of fee). Furthermore, Neville's criticism of Ahn's requested attorney's fees undercuts Neville's own request. Neville questioned Ahn's use of multiple attorneys because it unnecessarily increased the amount of hours billed. Yet Ahn's attorneys worked a total of 399 hours, which was not much more than Neville. The jury could have perceived Neville's criticism of the hours billed by Ahn's attorneys as a factor that cast doubt on the number hours he himself worked on the case. Therefore, the jury's award of $16,500 in attorney's fees is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176.

We overrule the Kims' second issue.

## D. Segregation of Fees after Jury Verdict

In their third issue, the Kims contend that the trial court erred by sustaining Ahn's post-verdict objection to the Kims' failure to segregate their attorney's fees. The Kims argue that Ahn waived the segregation issue by failing to raise it before the jury was charged. Because it was waived, the Kims assert that the trial court erred by holding a bench trial on segregation of attorney's fees after the jury's verdict was returned.

Even if the trial court erred by sustaining Ahn's untimely objection, the Kims never brought this error to the trial court's attention. To preserve a

28

complaint for appellate review, the record must show that the complaining party gave the trial court an opportunity to rule on the complaint by presenting that complaint to the trial court in a specific and timely request, objection, or motion. TEX. R. APP. P. 33.1(a). The Kims never informed the trial court of the complaint they now raise on appeal. No post-verdict or post-trial motion asserts that the trial court could not hold an evidentiary hearing on segregation of fees. At the evidentiary hearing, Ahn objected to the trial court hearing the evidence, insisting that it was a jury issue. But the Kims did not join in Ahn's objection or mention that Ahn had waived her complaint that the Kims had not segregated fees by failing to object to the charge. Because they did not bring this purported error to the trial court's attention, it is not preserved for our review. *See id.*

We overrule the Kims' third issue.

## Conclusion

We affirm the trial court's judgment.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.